A. D. ALEXANDER, Jr., Appellant,

v.

EDWARDS–NORTHCUTT–LOCKE et al.,

Appellees.

No. 15649.

Court of Civil Appeals of Texas.

Dallas.

Nov. 13, 1959.

Locke, Locke & Purnell, J. L. Shook and Wayne O. Woodruff, Dallas, for appellant.

Strasburger, Price, Kelton, Miller & Martin, and Royal H. Brin, Jr., Dallas, for appellees.

DIXON, Chief Justice.

This is an appeal from an order granting a temporary injunction.

Appellees Edwards-Northcutt-Locke, a partnership, and William F. McCarver brought suit against appellant A. D. Alexander, Jr., for breach by Alexander of a partnership dissolution contract.

McCarver and Alexander were at one time partners operating Pioneer Mortgage Company and Pioneer Insurance Agency. In December 1956 McCarver for a consideration of $35,000 purchased Alexander's interest in the partnership. A written dissolution contract was signed by the partners.

Since the controversy revolves around the meaning of certain paragraphs in the contract of dissolution, we quote material parts from the contract:

I.

"Alexander does here contract and agree to sell and by these presents does hereby sell and convey all the right, title and interest of Alexander in and to the partnerships, Pioneer Mortgage Co. and Pioneer Insurance Agency, including but not limited to their names, their assets, real and personal, all monies, bank accounts, accounts receivable, choses in action of every kind and character, and all other property, rights, claims, or value of whatever nature, character or description which Pioneer Mortgage Co. and Pioneer Insurance Agency own or may be entitled to upon the performance by McCarver of the terms and conditions hereinafter set out.

II.

"Alexander further agrees to and by these presents does hereby sell, assign and convey to McCarver all life, fire, casualty and all other types of insurance commissions whether now due to Alexander or to become due in the future and being either first year commissions or renewal commissions on any insurance policies written by Alexander while doing business as a partner in Pioneer Insurance Agency; it being understood and agreed by the parties hereto that Alexander is in no way

selling, assigning or conveying any insurance commissions, premiums or other interests in and to any insurance policies of any kind, character or nature whatsoever which may be written by Alexander after the date of this contract.

### VIII.

"McCarver and Alexander each agree that Alexander has the right to engage in the mortgage loan business and in the insurance business in competition with Pioneer Mortgage Co. and/or Pioneer Insurance Agency at any time that he may desire and further that Alexander shall not by this agreement, be prohibited from soliciting secondary correspondencies with the present investors of Pioneer Mortgage Co."

In December 1957 McCarver sold to Edwards-Northcutt-Locke all his rights and interest, including contingencies, in and to Pioneer Insurance Agency.

In their original petition filed April 3, 1959, appellees alleged that Alexander in violation of the express and implied provisions of the contract was soliciting the renewal of policies covered by the contract, was soliciting customers of Pioneer Mortgage Company and Pioneer Insurance Agency, and was making use of the confidential knowledge and information obtained by him as a partner in said companies. Appellees further alleged that such conduct on the part of Alexander had deprived appellees of commissions in excess of $500 they would otherwise have received, and would in the future deprive them of commissions to which they were entitled; and that they had no adequate remedy at law.

After a hearing a temporary injunction was granted whereby Alexander, pending trial of the case on its merits, was enjoined from "soliciting the sale of renewal or replacement insurance policies to any person holding an expiring insurance policy purchased from or through Pioneer Insurance Agency."

Alexander filed a general denial and cross-action in which he relies on paragraphs I, II, and VIII of the contract as hereinbefore quoted as giving him the right to solicit the renewals in question. He alleged further that he had been damaged and is being damaged in the amount of $100 per day during the pendency of the suit, wherefore he asked judgment of $2,000 against appellees and the sureties on their injunction bond.

In his first point on appeal appellant Alexander asserts that the court erred in granting the temporary injunction "because as a matter of law defendant-appellant's right to solicit such persons did not pass with the sale of his interest in the assets of the Agency."

This Court has held that an asset of an insurance agency which may be sold and conveyed by a seller to a purchaser is the right in and to expirations of all policies written by the seller, and also an asset is the right to control and solicit renewals of all policies written by the seller. Cottingham v. Engler, Tex.Civ.App., 178 S.W.2d 148. The opinion also quotes from Kerr & Elliott v. Green Mountain Mutual Fire Ins. Co., 111 Vt. 502, 18 A.2d 164, 167, 168, as follows:

"In the insurance field the term 'expirations' has a definite meaning. As to this it has been stated: 'The record known in insurance circles as expirations is in effect a copy of the policy issued to the insured, which contains the date of issuance, name of the insured, expiration, amount, premiums, property covered and terms of insurance'."

Appellees say that the Cottingham case, above cited, is controlling here.

Appellant says that the Cottingham case is to be distinguished from the instant case because the contract in the Cottingham case is materially different in several particulars from the contract under consideration here. This is especially true, says

appellant, in that the Cottingham contract expressly recites that the sellers were transferring the exclusive right to control and solicit renewals, whereas the contract now before us contains no such provision.

Appellant says further that in soliciting renewals he is not in any way using the "expirations" which he admits he sold to McCarver. He says that he entered into a mortgage loan servicing contract with Victory Life Insurance Company, which he had a right to do; and it was through loan records turned over to him by Victory Life Insurance Company that he, Alexander, learned of the expiration dates of insurance policies covering property on which Victory Insurance Company carried loans. He says he did not come by such information from his knowledge of Pioneer Insurance Agency's "expirations".

Appellees' position on the other hand is that the terms of the contract between Alexander and McCarver provide by necessary implication that Alexander was selling and transferring not only the right to use Pioneer Insurance Agency's "expirations", that is, the records and data with respect to policies, but was selling and transferring also the right to solicit renewals of policies written by Pioneer Insurance Agency, regardless of where Alexander got his information that the policies were about to expire.

In support of this position appellees point out that paragraph I of the contract conveys all of Alexander's interest in the assets of Pioneer Insurance Agency, and that paragraph II conveys all of Alexander's commissions "now due or to become due in the future and being either first year commissions or renewal commissions on any insurance policies written by Alexander while doing business as a partner in Pioneer Insurance Agency."

At the hearing both sides contended that the contract is not ambiguous, but appellees offered parol testimony because "it is at least theoretically possible that the court might be of the opinion that the contract is ambiguous." Over appellant's objection the trial court admitted the testimony. Apparently the court was of the opinion, and we are inclined to agree, that the contract is ambiguous.

The attorney who drew the written contract testified as to statements made by Alexander and McCarver with reference to their intention, and as to their statements with reference to their understanding of the meaning of the contract. This testimony supports appellees' contention that it was intended by both parties that Alexander was conveying his right to solicit renewals. McCarver gave similar testimony.

We cannot say that as a matter of law appellant's right to solicit renewals did not pass with the sale of his interest in the agency.

We overrule appellant's first point on appeal.

In his second point appellant says that the court erred in holding that appellees have no adequate remedy at law, said holding being error because appellees pleading and proof demonstrate the adequacy of damages as a remedy for the purported breach of contract. In support of this point appellant cites and quotes testimony to the effect that through depositions and discovery methods appellees could ascertain how many renewals Alexander has written, and thus could compute how much in commissions has been lost.

We are unable to agree with appellant that appellees have an adequate remedy at law. As appellees say, even if it were possible to prove the exact amount of damages that had accrued at any particular time, appellees would still be faced with the necessity of bringing a multiplicity of suits, since at the time of each suit they could only recover the damages they could prove had accrued up to the time of suit. If Alexander continued to violate the contract, appellees would have to keep bringing suit after suit.

Under such circumstances the remedy of damages is not adequate and the remedy of injunction is proper. City of Wichita Falls v. Bruner, Tex.Civ.App., 191 S.W.2d 912; Moore v. Duggan Abstract Co., Tex.Civ.App., 154 S.W.2d 519; McAnally v. Person, Tex.Civ.App., 57 S.W.2d 945; Goldberg v. Soltes, Tex.Civ.App., 32 S.W.2d 246.

It is to be remembered, too, that the granting of a temporary injunction as a general rule lies within the discretion of the trial court, and the action of the court will not be reversed on appeal unless there is a showing of abuse of discretion. Fort v. Moore, Tex.Civ.App., 33 S.W.2d 807; 24-A Tex.Jur. 39; 382. We cannot say that there has been an abuse of discretion in this case.

Appellant's second point is overruled.

Judgment of the trial court is affirmed.